**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**
**CRIMINAL ACTION NO.: 05-66-JBC**
**CIVIL ACTION NO. 07-172-JBC**

**UNITED STATES OF AMERICA,**                                    **PLAINTIFF**

**VS.**

**DOUGLAS INGRAM,**                                              **DEFENDANT**

**REPORT & RECOMMENDATION**

Defendant Douglas Ingram, proceeding *pro se*, has filed a *pro se* motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. The United States has moved to dismiss the motion, arguing that the defendant has waived any right to file a post-conviction motion. The original motion to vacate and the motion of the United States to dismiss have both been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. §636(b).

**I. Factual Background**

Pursuant to a written plea agreement, defendant pleaded guilty on January 13, 2006 to Counts 3 and 4 of the indictment against him, being a felon in possession of a firearm and forfeiture of the subject firearm. In return, the United States agreed to dismiss Counts 1, 2 and 5 of the indictment. On March 5, 2007, the defendant was sentenced to a term of fifteen years' imprisonment, to be followed by five years of supervised release.

The defendant filed no direct appeal, but on October 24, 2007 filed this collateral challenge to his conviction and sentence. In his §2255 motion, the defendant argues that he received ineffective assistance of counsel when his attorney failed to adequately challenge the

defendant's designation as an Armed Career Criminal.  According to the defendant, one of the convictions should not have been counted toward that status, and two related convictions should have been counted as one.   In addition, the defendant believes that the length of his term of supervised release is incorrect, and that he has been sentenced in violation of Double Jeopardy due to the use of related convictions under the ACCA.

The United States has moved to dismiss the defendant's §2255 motion as expressly barred by the defendant's plea agreement.  The written plea agreement contains the following three relevant provisions:

> 4.  The defendant understands that because he has three prior violent felony convictions, he may qualify as a[n] Armed Career Criminal under 18 U.S.C. Section 924(e).  The statutory punishment for an Armed Career Criminal is not less than 15 years in prison, a fine of not more than $250,000., or both, and a term of supervised release of not more than five years.   A mandatory special assessment of $100.00 applies, as well.
> ...
> 6.  If the guideline calculation determined by the United States Probation Service provides for a guideline range that includes a range higher than fifteen years, the United States will recommend to the Court that the Court's sentence be **limited** to fifteen years.
> ....
> 9.  The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction.  The defendant also waives the right to appeal and the right to attack collaterally any sentence that does not exceed fifteen years.

Doc. 23 (emphasis original).  The agreement also contains a statement affirming the defendant's understanding of its terms, that defendant's attorney had fully explained the agreement to him, and that his agreement was voluntary.  Id. at ¶15.

In addition to the written plea agreement, the court has before it the transcript of defendant's plea proceeding.  Because of the importance of that proceeding to merits of the instant collateral motion, several pages of the transcript will be quoted herein.

Prior to accepting the defendant's plea, the presiding trial judge first reviewed the three relevant paragraphs of the written agreement:

> THE COURT: ...I'm going to ask [A.U.S.A.] Ms. Voorhees to summarize this plea agreement in words that a non-lawyer like you can easily understand.  And then you may turn your back on me and listen to her if you want.  And then when she finishes, you and I will talk again.
> Will you do that, Ms. Voorhees, please?
>
> MS. VOORHEES: Yes, Your Honor.
> And I would like to mention before we do that, Mr. Schulkens and I have been discussing the terms of this agreement over the last couple of days.  And I understand Mr. Schulkens went out and met with the Defendant last night at the jail and covered the terms with him also.  It wasn't a last-minute thing.
>
> MR. SCHULKENS: That's correct.
>
> THE COURT: Okay.  Thank you.
>
> MS. VOORHEES: Pursuant to the terms of our agreement the Defendant, as he said, will plead guilty to Count Three, which charges him with being a felon in possession of a firearm.  He will also plead guilty to Count Four, which simply seeks to forfeit his interest in the firearm.
>
> Pursuant to Paragraph Four, the Defendant understands that because he has three prior violent felony convictions, he may qualify as an armed career criminal under Title 18, Section 924(e).  And that the statutory punishment for an armed career criminal is not less than 15 years in prison, a fine of not more than $250,000, and a term of supervised release of not more than five years.
>
> There is also a special assessment of $100.
> ...........
> Pursuant to Paragraph Six, it's stated that if the guideline calculations as determined by the probation service provides for a guideline range that includes a range higher than 15 years, the United States will recommend to the Court that the Court sentence be limited to 15 years only.
> ......
> Finally, the substantive – the last substantive paragraph is Paragraph Nine.  It states the Defendant waives the right to appeal the right to attack collaterally the guilty plea and conviction.  The Defendant also waives the right to appeal and the right to attack collaterally any sentence that does not exceed 15 years.
>
> THE COURT: All right.  Thank you.

Mr. Ingram, did you hear and understand what she just said about that plea agreement?

DEFENDANT INGRAM: Yes, ma'am.

THE COURT: Did she describe it accurately?

DEFENDANT INGRAM: Yes, Your Honor.

THE COURT: Okay.  Just a few questions for you.  Do you understand that you have given up your right to appeal a sentence if it is not over 15 years?

DEFENDANT INGRAM: Yes.

THE COURT: And do you understand that you have given up your right to appeal or to file a separate lawsuit attacking your plea or your conviction?

DEFENDANT INGRAM: Yes.
.....
THE COURT: Do you understand that if you had not signed this agreement giving up your right to appeal, you would have that right?

DEFENDANT INGRAM: As part of the plea agreement, so I had to sign it.

THE COURT: Well, you didn't have to sign it.

DEFENDANT INGRAM: Well, I mean if I wouldn't sign it, I wouldn't get the plea agreement.

THE COURT: Okay.  So do you sign it voluntarily?

DEFENDANT INGRAM: Yes, sir – yes, Your Honor.

THE COURT: And do you give up this right of appeal voluntarily?

DEFENDANT INGRAM: Yes, Your Honor.

THE COURT: And you know what you're giving up.

DEFENDANT INGRAM: My life, yes, Your Honor.

THE COURT: No.  The right of appeal.  Do you understand that?

DEFENDANT INGRAM: Yes.

> THE COURT: And do you understand also that you wouldn't have the right to file a separate lawsuit attacking your plea, your conviction, or your sentence if you hadn't given it up in this document?
>
> DEFENDANT INGRAM: Yes.
>
> THE COURT: And you give those rights up voluntarily as well?
>
> DEFENDANT INGRAM: Yes.

Doc. 44, pp. 7-11.

After reviewing the basic provisions of the agreement, the trial judge discussed extensively the limits on appeal and collateral challenges, the parties' agreement that the defendant would be sentenced to fifteen years, and the possibility that the court could sentence the defendant to even more than fifteen years.

> THE COURT: ....Also, in your plea agreement you understand that in –do you understand there are sentencing guidelines that are advisory to this Court?
>
> DEFENDANT INGRAM: Yes.
>
> THE COURT: **And do you understand if those guidelines recommend a sentence higher than 15 years, the Government will recommend 15 only?**
>
> DEFENDANT INGRAM: Yes.
>
> THE COURT: Okay.  But do you understand that after I look at the sentencing guidelines, I also look at the statute that sets out the purposes of sentencing, and I consider all of that together to come up with a reasonable sentence?  Do you understand that the guidelines are not mandatory?  I don't have to follow them.
>
> DEFENDANT INGRAM: I don't have to get the 15?
>
> THE COURT: No.  Do you understand that I don't have to follow the guidelines whatever they are?
>
> DEFENDANT INGRAM: Yes, ma'am.  Thank you.
>
> THE COURT: Do you understand that I look at the statute that tells me what the purposes of sentencing are, and I recite all of those, and then considering the

-5-

guidelines and those purposes, I'll come up with a sentence I think is reasonable?

DEFENDANT INGRAM: Yes, ma'am.

THE COURT: Okay. **So do you understand that there is no guarantee here that your sentence will be limited to 15 years?**

DEFENDANT INGRAM: **Are you saying it could be higher?**

THE COURT: **Could be higher. Do you understand that?**

DEFENDANT INGRAM: **No, I didn't. It was my understanding that it would be maxed out at 15.**

THE COURT: **That is what the recommendation will be from the parties, but I didn't sign this agreement. And so I'm not agreeing to anything. And I get to sentence you. And I just want to be sure that you understand that they can't bind me. I don't know what your sentence is going to be, because I haven't looked at all the facts. But you can appeal a sentence that's over 15 years.
Do you understand that?**

**DEFENDANT INGRAM: Yes**, ma'am.

THE COURT: Okay. All right.

MR. SCHULKENS: If the Court please, may I address this with him again? Because I don't think he – he still has a little bit --

THE COURT: Yes, you may. Just step aside from the microphone.

MR. SCHULKENS: He's fine to do it here.

THE COURT: Okay.

MR. SCHULKENS: **You understand the recommendation from the Government is 15 years?**

DEFENDANT INGRAM: **Yes**.

MR. SCHULKENS: **And they – if the guidelines would say it should be higher, 18 years, you understand the Government will still recommend that it to be limited to 15. But the Judge is saying that she can make it 18 as an example. But you under that circumstance would have a right to an appeal**

-6-

**because it's higher than the 15 that you --**

DEFENDANT INGRAM: To withdraw the plea you mean?

MR. SCHULKENS: **That's what you would be asking for the Court to set aside, another Court to set aside your sentencing because it was higher than the 15 that was recommended by the Government.**

DEFENDANT INGRAM: **All right.  Yeah**.

MR. SCHULKENS: Okay.

.......
THE COURT: Okay.  All right.  **My only point is, do you understand that this agreement is between you and the Government and not – I'm not a party, and I get to sentence you.  And so I can't promise you right now what your sentence will definitely be.  You understand that?**

DEFENDANT INGRAM: I always thought the plea agreement was like between the Defendant and prosecutor and Judge, and if the Judge accepts it, it's law.

THE COURT: No.  I haven't signed on to this yet.  I don't – I see the plea agreement**.  I know that you are agreeing that 15 years is reasonable.**  If it comes out higher than that, but I want to see - I'm not agreeing right now to sentence you to anything.  Now, what I'll do is I'll accept – at the end of today, I'll accept this plea agreement conditionally, and I won't accept it fully until the day of sentencing.

   Do you understand that?

DEFENDANT INGRAM: Conditionally?  You mean –

THE COURT: Right.  Conditionally, meaning the condition is I want to see the Presentence Report before I accept it fully.

DEFENDANT INGRAM: I can guarantee you it's going to be very, very bad.  I have a very bad criminal record.

THE COURT: I understand.  But I just want to be sure you understand that I'm not bound by this plea agreement.

DEFENDANT INGRAM: Yes, ma'am.

MS. VOORHEES: Judge, it may help the Defendant to know that you will

consider our recommendation –

THE COURT: Oh, of course.

MS. VOORHEES: – when you're making this determination.

THE COURT: Of course.  The recommendations will be made to me.  You understand that?

DEFENDANT INGRAM: Yes.

.........
THE COURT: Okay.
     All right.  Let me – let me make sure you understand what you're giving up if you plead guilty.
     **First of all, you need to understand the maximum consequences.  And they are these: For Count Three the maximum is 15 years.**
     **Is that right?  I'm trying to read this.**

DEFENDANT INGRAM: **Yes, Your Honor.**

THE COURT: **It says, the maximum ten years, except that the Defendant is charged under 924(e), which comprises mandatory minimum of 15 years.  So that's the mandatory minimum.**

DEFENDANT INGRAM: **Yes.**

MS. VOORHEES: **It's not less than 15.  It could be higher.**

THE COURT: **Right.  Mandatory minimum.**
     **Do you understand that's the shortest sentence you could get?**

DEFENDANT INGRAM: **Yes, Your Honor.**

.................

THE COURT: **Okay.  You should also be aware that you may have armed career offender status.**
     **Do you understand that?**

DEFENDANT INGRAM: **Yes, Your Honor.  That's what jacked it up to 15.**

THE COURT: I'm sorry?

-8-

   DEFENDANT INGRAM: That's what jacked the court up to 15 years.

   THE COURT: Well, actually – well, okay.  All right.  I will leave it at that.

Doc. 44 at 12-18 (bold emphasis added).  Finally, the record of the re-arraignment reflects defendant's request to be sentenced immediately by the trial judge and to "waive the PSI report" based upon the fact that his criminal record "is as bad as it can get."  Id. at 20.

  **II.  Analysis**

  **Valid Waiver Generally Bars Relief**

   A motion brought pursuant to 28 U.S.C. §2255 is a collateral attack on a conviction.  The defendant expressly waived his right to collaterally attack his conviction and sentence by agreeing to the plea bargain.  Therefore, absent exceptional circumstances, the defendant's present § 2255 motion is barred by the express terms of his plea agreement.

   Even a constitutional right may be waived, as long as a defendant did so by knowingly and voluntarily entering into a plea agreement. *See, e.g.*, *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004).  The Sixth Circuit has held that a defendant's informed and voluntary waiver of the right to collateral attack bars such relief.  *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *Hunter v. United States*, 106 F.3d 1109, 1113 (6th Cir. 1998).  As the Sixth Circuit stated,  "when a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack his or her sentence, he or she is precluded from bringing a claim of ineffective assistance of counsel based on 28 U.S.C. § 2555."  *Davila,* 258 F.3d at 451.  The rare exception to this rule is when the collateral attack concerns the validity of the waiver itself; otherwise, such a waiver would never be effective.

Defendant's response in opposition to the Government's motion to dismiss his §2255 motion argues that his waiver should not be enforced.  Ingram first argues that the plea agreement is unenforceable because the defendant was not aware that the shortest sentence he would receive was fifteen years.  Instead, the defendant contends that - notwithstanding the record evidence - his attorney advised him that the defendant "would not be enhanced as an Armed Career offender *if* it was shown that the 1979 Alabama burglary charge against Mr. Ingram had been dismissed," that the defendant provided his attorney "with proof that this prior charge had been dismissed, but that counsel failed to present that proof" to the court.[1]  In his memorandum in opposition, the defendant insists that his attorney advised him prior to the plea proceeding "that he was not a career offender subject to a fifteen year sentence" but that instead, "his sentence could not exceed ten (10) years."  Based upon this alleged wrong advice and/or misunderstanding, the defendant now claims that his plea and waiver were involuntary.

The defendant's recent allegations are wholly incredible in the face of the written plea agreement and his extensive statements in open court.  The bolded portions of the transcript set forth above amply demonstrate that the defendant was well aware that he was to receive 15 years' imprisonment, and that he could not appeal or collaterally challenge any sentence that did not exceed 15 years.  To reiterate but one key portion:

> THE COURT:...It says, the maximum ten years, except that the Defendant is charged under 924(e), which comprises mandatory minimum of 15 years.  So that's the mandatory minimum.

---

[1] The record reflects that defense counsel did, in fact, object to the designation of defendant as an armed career criminal based upon a challenge to a burglary offense.  Counsel additionally tendered to the court several documents provided to him by the defendant. *See generally* Doc. 40; Doc. 39 at 5-14.  The defendant filed specific objections to the PSI concerning his designation as an armed career criminal, but the court overruled those objections.

-10-

      DEFENDANT INGRAM: Yes.

      MS. VOORHEES: It's not less than 15.  It could be higher.

      THE COURT: Right.  Mandatory minimum.
          Do you understand that's the shortest sentence you could get?

      DEFENDANT INGRAM: Yes, Your Honor.

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

      The defendant does not claim to have been unaware of the waiver provision to which he agreed and the transcript forecloses any challenge on this ground.  In fact, the defendant freely questioned what he initially did not understand (that he could receive *more* than a fifteen year sentence) and ultimately indicated that he understood both his likely sentence (15 years) and that his plea agreement barred all claims absent a sentence in excess of 15 years.  As a result, the presiding judge found the defendant to be "competent" and "aware of the consequences" of his plea.  Doc. 44 at 23.

      The defendant cannot now claim that his plea was somehow involuntary based upon a new allegation that his attorney suggested that he would receive a ten-year sentence if his objections to the armed career criminal designation were to be accepted by the court.  Inaccurate predictions by counsel do not render a guilty plea invalid or constitute ineffective assistance where the Court has accurately advised the defendant of sentencing ramifications and of all the rights he is waiving.  *See e.g., United States v. Stephens,* 906 F.2d 251, 253 (6th Cir. 1990); *see also United States v. Cinnamon*, 112 Fed.Appx. 415, 419 (6th Cir. 2004).  The defendant's recent

allegation that he believed he would receive a sentence of ten years is flatly contradicted by the record as well as barred by his waiver. *Accord Davila*, *supra* (defendant's knowing waiver of right to bring 2255 motion except under specified circumstances barred motion on other grounds); *see also United States v. Wilson*, 428 F.3d 672, 673 (6th Cir. 2006)(waiver valid where the court reviewed the charges, established defendant's competency, inquired about defendant's satisfaction with counsel, and verified defendant's understanding of the terms of plea agreement).

      The presiding district judge fully complied with Federal Rule of Criminal Procedure 11 to ensure that the defendant understood both his probable sentence and the terms of the waiver. The Rule 11 colloquy eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). The defendant repeatedly affirmed that he understood that he was waiving any and all rights to challenge any sentence that did not exceed 15 years in length.

      The defendant does not challenge his understanding of the waiver or the "very validity" of his plea as contemplated by *In re Acosta*, 480 F.3d 421 (6th Cir. 2007). Instead, his real complaint is his attorney's inability to convince the trial judge to sentence the defendant below the clearly anticipated sentence of 15 years. The defendant's motion is an affront to his expressed voluntary agreement not to collaterally attack a sentence of 15 years and is wholly without merit. *See Nunez v. United States*, 495 F.3d 544, 547 (7th Cir. 2007)(holding that waiver of collateral attack bars right to claim ineffective assistance of counsel, except for narrow grounds of relief challenging validity of waiver).

      **Applicability of Waiver to Specific Claim**

Relying on *United States v. Caruthers*, 458 F.3d 459, 470-472 (6th Cir. 2006), the defendant alternatively contends that the waiver does not bar this particular challenge, because his sentence exceeds the statutory maximum. Of course, this contention presumes that the defendant did not qualify for the Armed Career Criminal enhancement. *Caruthers* is inapplicable because the fifteen year sentence that defendant received does not exceed the statutory maximum for an Armed Career Criminal. The defendant's underlying challenge to his designation as an Armed Career Criminal was explicitly, knowingly and voluntarily waived in his written plea agreement and cannot be considered in this proceeding since his sentence did not exceed 15 years. *Accord Sutton v. United States,* 2007 WL 3237161, at *4 (W.D.Ky. Oct. 31, 2007)(petitioner's claim that counsel was ineffective "goes to the issue of sentencing, not to the voluntariness of [petitioner's] plea and waiver.").

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** the motion of the United States to dismiss defendant's collateral attack [Doc. #47] be **granted** and that the defendant's motion to vacate his sentence [Doc. #42] be **denied** and dismissed from the active docket.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service or further appeal is waived. *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's

interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within ten days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

      This the 29th day of October, 2008.

Signed By:
**J. Gregory Wehrman**
United States Magistrate Judge